IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLARD M. IMAMOTO, | ) | CIVIL NO. 08-00137 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | ARLEEN JOUXSON'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION; IRENE | ) | |
| KISHITA; DEPARTMENT OF | ) | |
| HUMAN SERVICES, STELLA | ) | |
| TRIPP; ARLEEN JOUXSON, ESQ.; | ) | |
| and PATRICIA MURAKAMI, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT ARLEEN JOUXSON'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff pro se Willard Imamoto ("Plaintiff") filed a Complaint against various government Defendants and attorney Arleen Jouxson ("Jouxson") on March 24, 2008.  Plaintiff alleges violations of 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title II of the Americans With Disabilities Act ("ADA"), Title XVI of the Social Security Act, and legal malpractice, and seeks damages against the Social Security Administration ("SSA") in the amount of $300,000,000 and against Jouxson for $4,000,000.

Briefly, Plaintiff alleges that in August 2000, he retained Jouxson to represent him in challenging the denial of certain benefits from the SSA, and that Jouxson committed malpractice because she (1) sought medical records from his physician when Plaintiff had not authorized their release, and (2) breached her contract of representation because she could not achieve the result purportedly guaranteed by contract. Jouxson moves for summary judgment on the grounds that Plaintiff's claims are barred by the statute of limitations and because his claims are factually unsupported. Plaintiff argues that his claims against Jouxson should be tolled due to insanity. Based on the following, the court GRANTS Jouxson's Motion for Summary Judgment.

## II. __BACKGROUND__

### A.   **Factual Background**

#### *1.   Plaintiff's Allegations*

Plaintiff was incarcerated at the Oahu Community Correction Center in 1995, but transferred twice to the Hawaii State Hospital in 1995 and 1997. Pl.'s Ex. A at unmarked page 1.[1] On August 20, 1998, Plaintiff was released from the Hawaii State Hospital on a conditional release. *Id.* On December 8, 1998,

---

[1] Unless otherwise noted, all references to Plaintiff's exhibits refer to those attached to Plaintiff's Complaint.

2

Plaintiff received a letter from the SSA stating that he met the "medical requirements" for disability benefits, because his chronic paranoid schizophrenia prevented him from working beginning in 1994. *Id.* at unmarked page 3. The letter also stated, however, that no determination had been made regarding whether Plaintiff met the non-medical requirements for disability benefits. *Id.*

On January 4, 1999, Plaintiff received a letter from the SSA informing him that he was eligible to receive Supplemental Security Income ("SSI") payments under the provisions of Title XVI of the Social Security Act. *Id.* at unmarked page 5. On January 2, 2000, the SSA sent Plaintiff a letter, signed by Defendant Irene Kishita, informing him that the SSA had overpaid him SSI benefits from November 1998 through July 2000, in the amount of $8,644.32. Pl.'s Ex. C at unmarked page 2. Although unclear, Plaintiff appears to allege that he was denied SSI based on a government fraud and a conspiracy to cover up the fraud. Compl. at 5-11.

On August 9, 2000, Plaintiff telephoned Jouxson seeking an attorney to file a Social Security appeal. Pl.'s Ex. E at unmarked page 1. Jouxson memorialized this conversation in a letter to Plaintiff dated August 16, 2000, which also instructed him to send her a copy of his SSI denial letter and medical

records.  *Id.*  It appears that Plaintiff then sent Jouxson a hand-written letter dated

August 21, 2000, which states:

> About your letter I received on August 17, 2000.  I'm not in
> any rush to file the appeal.  What I can show is definite.  I can
> always exten[d] the appeal process through good cause.  I want
> payment continuance after I appeal.  Then pursue a class action
> against them with a personal injury lawyer -- certified that very
> day.  I also have the media's [sic] if they give me a hard time
> for payment continuance.  Did you receive all of my documents
> -- the first 2 pages from page 11, Letter of Authorization and
> Notice of Termination papers which state nothing about
> payment continuance -- but only about keeping this matter
> hush-hush[?]

*Id.* at unmarked page 2.

On August 22, 2000, Jouxson sent a letter to Dr. Tom Leland at the

State of Hawaii Department of Health, Kalihi-Palama Treatment Service Section,

requesting Plaintiff's medical records.  Def.'s Ex. D; Pl.'s Ex. E at unmarked

pages 4-5.  Attached to the letter was a copy of an authorization to release records,

hand-written by Plaintiff, which states:

> This is Willard M. Imamoto.  Arlene Jouxson is helping me
> with my Social Security disability issue.  I authorize her to talk
> to my doctors for any information that can help me in my case.
> These are the Dr.'s names -- Dr. Tom Leland and Dr. Paul
> Malarik at 832-5800.  Thank you, Willard M. Imamoto

Def.'s Ex. E.  Also attached to Jouxson's letter to Dr. Leland was a form signed

and dated by Plaintiff on August 1, 2000 entitled Authorization for Source to

4

Release Information to the Social Security Administration, which lists Dr. Leland

as the source of medical information who is specifically authorized to release

records to the SSA.  *Id.*

On August 25, 2000, Jouxson sent Plaintiff a letter agreeing to

represent him in his Social Security appeal, which states:

> My review of you[r] SSI denial has revealed that we may
> have a good chance in reversing the denial as well as the
> request for a refund of the $8,600.00.  I am therefore willing to
> accept your case if you wish.  If we lose there will be no
> charge.  However if we win, I will request an authorization for
> payment from the judge who presides over your case.
>
> If you decide to go forward with your case I will need
> you to fill out the top portion of the Appointment of
> Representative and return it to me as soon as possible along
> with the Release and Authorization for Dr. Steven Wallach to
> give information to me.
>
> As soon as I receive these documents I will start working
> on your case.

Def.'s Ex. A; Pl.'s Ex. E at unmarked page 5.

Jouxson again wrote to Plaintiff on August 28, 2000, stating:

> Per your telephone call today, I am returning herewith all
> information you submitted to me regarding your social security
> appeal.  I understand that you do not wish for me to represent
> you in your social security case.  I will discontinue all work on
> your case effective today.

Def.'s Ex. B.

Plaintiff's March 24, 2008 Complaint alleges that Jouxson committed legal malpractice during her brief representation of him in August 2000.[2] Plaintiff's Complaint alleges that he did not authorize Jouxson or Dr. Leland to release information to the SSA. Compl. at 12. Plaintiff also claims that Jouxson breached their express contract, "which involved a specific promise that could never happen," apparently referring to Jouxson's August 25, 2000 letter accepting Plaintiff's case. *Id.* The Complaint states that "Arleen Jouxson did not carry out the subject matter of retention, and deviated to a specific promise that could not happen, deeming Arleen Jouxson incompetent for representation, although the attorney-client status existed, Arleen Jouxson failed in her duty/loyalty that's owed a client." *Id.* Plaintiff also indicates that "I am also claiming fraud or deceit just to provide the basis for punitive damages." Compl. at 13.

### 2.    *Plaintiff's Mental Illness*

The record indicates that Plaintiff has been diagnosed as having chronic paranoid schizophrenia from at least 1997. *See* Pl.'s Ex. B. Exhibits attached to Plaintiff's Opposition indicate that in 2005, the State sought a court order authorizing the Director of Health to administer psychiatric medications to

---

[2] The Complaint vaguely alleges that Jouxson also attempted to conceal government fraud and violated his civil rights. Compl. at 12.

Plaintiff over his objection, because Plaintiff "is mentally ill, he is delusional, verbally threatening, paranoid, volatile, and easily explosive."  Unmarked exhibit attached to Pl.'s Opp'n, at hand-written "p3."

In December 2004, Plaintiff's treating physicians at Kahi Mohala Behavioral Health filed a request for legal assistance concerning involuntary treatment for Plaintiff.  Unmarked exhibit attached to Pl.'s Opp'n, at hand-written "p4."  The request indicates that Plaintiff had been temporarily hospitalized by court order dated November 21, 2004; before this hospitalization, it appears Plaintiff lived with family or in his own home.  *Id.*  Plaintiff's December 2, 2004 proposed treatment plan at Kahi Mohala indicates that Plaintiff "has the diagnoses of Chronic Paranoid Schizophrenia, Cocaine and Methamphetamine Abuse, hypercholesterolemia, elevated liver enzymes, and a history of orthostatic hypotension."  Unmarked exhibit attached to Pl.'s Opp'n, at hand-written "p6."  It continues:

> He was admitted to Kahi Mohala on 10-19-04 on a 72-hour hold for possible revocation of conditional release (for terroristic threatening in 1998 for wielding a wooden axe handle at a professor).  Prior to admission to Kahi, he had been missing appointments with Kalihi Palama Mental Health Clinic and his probation officer, and had become non-compliant with his medications (Zyprexa and Seroquel).

*Id.*

7

Despite Plaintiff's history of mental illness, Plaintiff has shown an ability to advocate for his rights.  Unrelated to Jouxson's representation of Plaintiff in his appeal of his SSI benefits, the voluminous exhibits attached to Plaintiff's Complaint include several letters written by Plaintiff in August and September 2000 to various state and federal government agencies, including the state Office of Information Practices, SSA, and FBI, requesting information about the Disability Determination Service of the SSA pursuant to the Freedom of Information Act ("FOIA").  *See* Pl.'s Exs. G, H.  On September 23, 2000, Plaintiff also wrote a letter to the SSA indicating that he wished to appeal a September 13, 2000 eligibility determination.  Pl.'s Ex. H. at unmarked page 5.  Plaintiff also contacted the office of United States Senator Daniel Inouye for assistance with his Social Security dispute, and received a letter from the Senator's office dated November 20, 2000, which included correspondence received by the Senator from the SSA regarding the status of Plaintiff's benefits.  Pl.'s Ex. N.  Further, on November 8, 2000, Plaintiff filed a Discrimination Complaint Form with the federal Department of Health and Human Services, complaining of government fraud and civil rights violations arising out of his Social Security issues.  Pl.'s Ex. M.

**B.     Procedural Background**

Plaintiff filed his Complaint on March 24, 2008.  Jouxson filed her Motion for Summary Judgment on May 16, 2008.  Jouxson argues that Plaintiff's claims are barred by the statute of limitations and not tolled due to insanity. Alternatively, Jouxson seeks summary judgment on the grounds that Plaintiff's claims are factually unsupported.  Plaintiff filed an Opposition to the Motion for Summary Judgment on June 4, 2008, and Jouxson filed a Reply on June 19, 2008. The court held a hearing on June 30, 2008.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 316, 321 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.[3] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

---

[3] Plaintiff is appearing pro se; consequently, the court will liberally construe his

(continued...)

# IV. ANALYSIS

## A.  Statute of Limitations

Plaintiff's allegations against Jouxson relate primarily to her representation of him during August 2000.  To the extent Plaintiff intended to allege claims under 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title II of the ADA, or claims based on SSA regulations, he cannot bring these claims against Jouxson.[4]  The court therefore construes Plaintiff's claims against Jouxson as state law legal malpractice claims, and analyzes Jouxson's statute of limitations defense under the appropriate state statute of limitations.

### 1.  Six-Year Statute of Limitations for Legal Malpractice Claims

The statute of limitations for legal malpractice claims in Hawaii is six years.  *See* Hawaii Revised Statutes ("HRS") § 657-1 (providing that "actions shall be commenced within six years next after the cause of action accrued"); *Blair v.*

---

[3](...continued)
pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

[4] Although unclear, it appears Plaintiff claims that Jouxson violated his constitutional rights.  To the extent he alleges claims under § 1983, or under other federal statutes, he fails to state a claim against Jouxson.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970) (discussing requirement that the defendant act "under color of law" for purposes of 42 U.S.C. § 1983); *Radcliff v. Landau*, 883 F.2d 1481, 1482-83 (9th Cir. 1989) ("Title VI of the Civil Rights Act of 1964 . . . prohibits race discrimination in any program receiving federal funds."); *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1171 (9th Cir. 2002) ("Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" (*quoting* 42 U.S.C. § 12132)).

*Ing*, 95 Haw. 247, 267, 21 P.3d 452, 472 (2001).  Under the discovery rule, "a

cause of action does not 'accrue,' and the limitations period therefore does not

begin to run, until the plaintiff knew or should have known of the defendant's

negligence."  *Blair*, 95 Haw. at 264, 21 P.3d at 469 (citation omitted).  In other

words, "under the discovery rule, the statute of limitations begins to run the

moment the plaintiff discovers or should have discovered the negligent act, the

damage, and the causal connection between the former and the latter."  *Buck v.*

*Miles*, 89 Haw. 244, 251, 971 P.2d 717, 724 (1999) (citation, quotation signals,

and brackets omitted).

   Plaintiff's claims against Jouxson are based on events that occurred in

August 2000.  Plaintiff was aware of the allegedly illegal acts (*i.e.*, requesting his

medical records without authorization and breaching the terms of the

representation agreement), the damage caused to him, and the causal connection

between the two when he terminated Jouxson via telephone on August 28, 2000.

In his Opposition, Plaintiff concedes that he was aware of his cause of action when

he terminated her, stating: "Arlene Jouxson was representing me in this case until I

terminated her for misrepresentation, breach of verbal agreement and written

agreement."  Pl.'s Opp'n 2.  In other words, Plaintiff terminated Jouxson because

she allegedly breached the agreement.  The court concludes that Plaintiff's legal

malpractice claim accrued by August 28, 2000, when he terminated Jouxson based on her alleged malpractice.  The statute of limitations for any legal malpractice claim therefore expired six years later.

### 2.  Tolling

Plaintiff nonetheless asserts that he timely brought his March 24, 2008 Complaint because the statute of limitations was tolled due to his insanity. Hawaii's tolling provision, HRS § 657-13, provides:

> If any person entitled to bring any action specified in this part . . . is, at the time the cause of action accrued, either:
> (1) Within the age of eighteen years; or,
> (2) Insane; or,
> (3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life;
> such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

Under § 657-13 the statute of limitations is tolled only for disabilities that exist "at the time the cause of action accrued."  Thus, once that disability is removed, the statute of limitations begins and will not toll for later disabilities. *Turner v. City & County of Honolulu*, 2008 WL 1847915, at *5 (D. Haw. Apr. 24, 2008); *see also Gutierrez v. D.K. Butler*, 2008 WL 436948, at *2 (E.D. Cal. Feb. 14, 2008) ("A limitation period is not suspended by a disability or impediment to suit arising after the period commenced running."); *Gamba v. Woodford*, 2007 WL

2481746, at *3 (E.D. Cal. Aug. 29, 2007) (stating that the plaintiff must prove that he was continuously insane from the time his cause of action accrued, and noting that his "current and past filings in this court demonstrate he was able to file civil cases on his own behalf").

Although HRS § 657-13 does not define the meaning of "insane," the Hawaii Supreme Court discussed its contours:

> [J]urisdictions examining the meaning of insanity in the context of tolling the statute of limitations have liberally defined the term as: (1) the inability to understand one's legal rights or manage one's affairs; (2) the inability to understand the nature or effect of one's acts; or (3) the inability to carry out one's business and prosecute the claim.

*Buck*, 89 Haw. at 252, 971 P.2d at 725 (citations omitted); *see also Christian v. Waialua Agric. Co.*, 31 Haw. 817, 1931 WL 2823, at *41 (Haw. Terr. Apr. 18, 1931) (defining "insanity" as "a broad, comprehensive, and generic term, of ambiguous import, for all unsound and deranged conditions of the mind" and finding for contract actions that "[t]he proper inquiry is whether he was capable of understanding and appreciating the nature and effect of the one particular act or transaction which is challenged"); *see also Bond v. United States*, 43 Fed. Cl. 346, 349 (Fed. Cl. 1999) ("To maintain a claim of legal disability to toll the statute of limitations, the plaintiff must bear a heavy burden as the law presumes sanity and

competency rather than insanity and incompetency." (citation and quotation signals omitted)).

Although Plaintiff suffers from chronic paranoid schizophrenia, he has not demonstrated as of the accrual date (1) the inability to understand his legal rights or manage his affairs; (2) the inability to understand the nature or effect of his acts; or (3) the inability to carry out his business and prosecute the claim. *See Buck*, 89 Haw. at 252, 971 P.2d at 725. The conclusion that Plaintiff could understand his legal rights, understand the nature of his acts, and carry out his business and prosecute his claims is confirmed by the letters written by Plaintiff in August and September 2000 to various state and federal government agencies and many FOIA requests, Pl.'s Exs. G, H, as well as his September 23, 2000 appeal of a September 13, 2000 SSA eligibility determination. Pl.'s Ex. H. at unmarked page 5. Plaintiff also successfully sought assistance from Senator Inouye in his Social Security dispute. Pl.'s Ex. N. Finally, on November 8, 2000, Plaintiff filed a Discrimination Complaint Form pro se with the federal Department of Health and Human Services, complaining of the same facts that form the basis for his March 24, 2008 Complaint. Pl.'s Ex. M.[5]

---

[5] Further, since 2003, Plaintiff has filed eight other lawsuits pro se in this court. *See Imamoto v. U.S. Dep't of Justice*, Civ. No. 03-00032 SOM-LEK; *Imamoto v. Haw. State Hosp.*,

(continued...)

Plaintiff's pro se activities include clearly articulated requests for relief from appropriate state and federal agencies, and do not otherwise indicate that Plaintiff failed to understand the nature or effect of his actions.  For example, pursuant to applicable SSA guidelines, Plaintiff requested an "informal conference" to appeal his benefits determination on September 14, 2000.  Pl's. Ex. G.  With respect to this appeal, Plaintiff filed two FOIA requests seeking "information about disability determination services or DDS's for my appeal/case," from the state MedQuest agency and SSA.  *Id.*  Plaintiff filed another appeal of a separate September 13, 2000 ineligibility determination on September 23, 2000.  *Id.*  He then filed a FOIA request seeking "information/the reason [for the ineligibility determination] and if this is [pursuant to] federal codes," for the Department of Human Services' determination that he was not eligible for SSI.  *Id.*  Plaintiff's letters and filings set forth plausible claims for relief and proper requests for information.  These actions, as well as others taken

─────────────────────

[5](...continued)
Civ. No. 05-00076 HG-LEK; *Imamoto v. Kahi Mohala*, Civ. No. 05-00077 HG-LEK; *Imamoto v. State of Hawaii*, Civ. No. 05-00078 ACK-LEK; *Imamoto v. Kahi Mohala*, Civ. No. 05-00113 DAE-LEK; *Imamoto v. Haw. State Hosp.*, Civ. No. 05-00177 SOM-LEK; *Imamoto v. Haw. State Hosp.*, Civ. No. 05-00178 SPK-LEK; *Imamoto v. Haw. State Hosp.*, Civ. No. 05-00179 ACK-LEK.  *See Gamba v. Woodford*, 2007 WL 2481746, at *3 (E.D. Cal. Aug. 29, 2007) (observing that plaintiff's "current and past filings in this court demonstrate he was able to file civil cases on his own behalf").  The first of these cases, *Imamoto v. United States Department of Justice*, Civ. No. 03-00032 SOM-LEK, involved claims against many of the same Defendants as the instant case, including the SSA, Irene Kishita, the Department of Human Services, and Jouxson.

by Plaintiff, were consistent with the relief he sought.  That is, there is a nexus

between the content and type of activities undertaken by Plaintiff and the relief he

sought, all of which appear appropriate under the circumstances.

In sum, these facts establish that Plaintiff was able to understand his

legal rights, carry out his business, and prosecute his claims at the time his cause

of action accrued in August 2000.  Even assuming that Plaintiff was at one time

insane for purposes of the tolling provision, Plaintiff's disability was removed

(even if only temporarily) for the purposes of HRS § 657-13 through late 2000.

Even if Plaintiff's symptoms later recurred, any later insanity would not further

toll the statute of limitations.  *See Turner*, 2008 WL 1847915, at *5-7 (finding that

plaintiff failed to prove that he was continuously insane from the time his cause of

action accrued); *Gamba*, 2007 WL 2481746, at *3 (same).  Plaintiff did not file his

Complaint until March 24, 2008 -- more than six years after his cause of action

against Jouxson accrued.  Plaintiff therefore brought his claims after the statute of

limitations expired.

None of the evidence submitted by Plaintiff raises a genuine issue of

material fact regarding his insanity in late 2000.  Specifically, Plaintiff submitted a

number of exhibits regarding his treatment for and symptoms of chronic paranoid

schizophrenia in 2004 and 2005, but none of them indicates that Plaintiff was

17

unable to understand his rights and prosecute his claims in late 2000.  At most,

these exhibits confirm Plaintiff's diagnosis of chronic paranoid schizophrenia;

they do not, however, raise a fact issue as to whether Plaintiff meets the standard

of "insanity" necessary to toll the statute of limitations.  He does not.  *See*

*Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993) (noting that a court

cannot rely on diagnosis alone to determine whether a plaintiff is able to protect

his legal rights); *Nelson v. Reddy*, 898 F. Supp. 409, 411 (N.D. Tex. 1995)

("Accepting as true [plaintiff's] statement that he was under the care of mental

health professionals and received drug therapy, these factors do not establish that

he was a person of 'unsound mind' consonant with the Texas state courts'

interpretation of this term."); *Dumas v. Agency for Child Dev.-N.Y. Head Start*,

569 F. Supp. 831, 833 (S.D.N.Y. 1983) (stating that a diagnosis of "schizophrenia,

paranoid, chronic with acute exacerbation DSM III 295.34" did not result in

tolling because plaintiff's disability "was not of the severe and incapacitating

nature contemplated by the tolling statute.  The statute speaks in terms of insanity,

not merely mental illness").  The court GRANTS Jouxson's motion with respect to

the statute of limitations.[6]

---

[6] To the extent Plaintiff seeks to allege a claim of fraud against Jouxson, that claim is also barred by the six-year statute of limitations.  *See Eastman v. McGowan*, 86 Haw. 21, 27, 946

(continued...)

**B.    Summary Judgment**

        Alternatively, the court finds that Plaintiff cannot maintain a claim against Jouxson for legal malpractice based on his own admissions in his Opposition.  Plaintiff's Complaint alleges that he did not authorize Jouxson or Dr. Leland to release information to the SSA.  Compl. at 12.  Plaintiff also claims that Jouxson breached their express contract, stating that "Arleen Jouxson did not carry out the subject matter of retention, and deviated to a specific promise that could not happen, deeming Arleen Jouxson incompetent for representation, although the attorney-client status existed, Arleen Jouxson failed in her duty/loyalty that's owed a client."  *Id.*  In fact, (1) the release of Plaintiff's medical records was authorized by Plaintiff, and (2) any contract between Jouxson and Plaintiff did not guarantee a specific result.  The court addresses each in turn.

**1.    *Plaintiff's Medical Records***

        Jouxson's August 22, 2000, letter to Dr. Leland included an authorization to release records, hand-written by Plaintiff, which states:

---

[6](...continued)
P.2d 1317, 1323 (1997) ("Fraudulent misrepresentation is not governed by a specific limitations period, and the general [six-year] limitations period set forth in HRS § 657-1(4) applies."); *Hubbart v. State of Hawaii Office of Consumer Prot. Dep't of Commerce & Consumer Affairs*, 2008 WL 373167, at *5 (D. Haw. Feb. 11, 2008) ("Claims sounding in fraud, whether based on state or federal law, are governed by this six-year statute of limitations.").

> This is Willard M. Imamoto.  Arlene Jouxson is helping me
> with my Social Security disability issue.  I authorize her to talk
> to my doctors for any information that can help me in my case.
> These are the Dr.'s names -- Dr. Tom Leland and Dr. Paul
> Malarik at 832-5800.  Thank you, Willard M. Imamoto

Def.'s Ex. E.  Also attached to Jouxson's letter to Dr. Leland was a form signed

and dated by Plaintiff on August 1, 2000 entitled Authorization for Source to

Release Information to the Social Security Administration, which lists Dr. Leland

as the source of medical information whose release is specifically authorized.  *Id.*

Further, Plaintiff's Opposition admits that he authorized Jouxson to

request his medical records, and authorized his physicians to release them to her,

stating:

> Arlene and Mr. Portnoy state that I gave Arlene Jouxson
> authorization to speak with my treating physician through
> [their] exhibits attached to [their] motion for summary
> judgment.  *Which is true*, for I just wanted to show Ms.
> Jouxson that I had all the necessary credentials and records to
> qualify for SSA benefits.

Pl.'s Opp'n at unmarked page 2 (emphasis added).  Plaintiff's admission,

combined with his hand-written authorization to release his medical records,

Def.'s Ex. C, clearly shows that he authorized Jouxson and the physician to release

his medical records.  He also expressly authorized Dr. Leland to release his

medical records to the SSA.  *See* Def.'s Ex. E (form entitled Authorization for

20

Source to Release Information to the Social Security Administration, authorizing

Dr. Leland to release records to the SSA, signed by Plaintiff and dated August 1,

2000).  Plaintiff cannot maintain a legal malpractice claim against Jouxson based

on the allegations in the Complaint regarding his medical records.

> **2.      *Failure to Achieve a Specific Result***

Plaintiff's Complaint also alleges that Jouxson "did not carry out the

subject matter of retention, and deviated to a specific promise that could not

happen."  Compl. at 12.  This allegation appears to refer to statements in

Jouxson's August 25, 2000 letter agreeing to represent Plaintiff in his Social

Security appeal, which states:

> My review of you[r] SSI denial has revealed that we may
> have a good chance in reversing the denial as well as the
> request for a refund of the $8,600.00.  I am therefore willing to
> accept your case if you wish.  If we lose there will be no
> charge.  However if we win, I will request an authorization for
> payment from the judge who presides over your case.

Def.'s Ex. A; Pl.'s Ex. E at unmarked page 5.

Nothing in this letter, however, can be construed as a promise that a

specific result will be achieved.  Jouxson's statement that "we may have a good

chance in reversing the denial as well as the request for a refund," is simply her

opinion regarding the merits of Plaintiff's case and does not create a binding promise.

To the extent Plaintiff complains that Jouxson made "a specific promise that could never happen," the court rejects this claim. Plaintiff appears to believe that Jouxson's August 25, 2000 letter promised to *obtain* an additional refund of $8,600.00 for Plaintiff, which he claims is impossible because Jouxson "could not get a refund of the overpayment back to me, for money that SSA already paid me, impossible. . . . [S]he could not do what she said she could do." Pl.'s Opp'n at unmarked page 3. Plaintiff's claim is without merit. Jouxson's letter in no way promises to get Plaintiff an additional refund, rather, it indicates her belief that "we may have a good chance in reversing . . . the request for a refund of the $8,600.00." Def.'s Ex. C. To the extent Plaintiff misunderstands Jouxson's letter, he cannot maintain a claim for legal malpractice.

///

///

///

///

///

///

## V.  <u>CONCLUSION</u>

For these reasons stated above, the court GRANTS Defendant

Jouxson's Motion for Summary Judgment.  The claims against the other

Defendants remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 2, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Imamoto v. Soc. Sec. Admin., et al.*, Civ. No. 08-00137 JMS/KSC; Order Granting Defendant Arleen Jouxson's Motion for Summary Judgment

23