IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLARD M. IMAMOTO, | ) | CIVIL NO. 08-00137 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING |
| | ) | DEFENDANT STELLA TRIPP'S |
| vs. | ) | MOTION TO DISMISS AND (2) |
| | ) | DENYING PLAINTIFF'S COUNTER |
| SOCIAL SECURITY | ) | MOTION FOR SUMMARY |
| ADMINISTRATION; IRENE | ) | JUDGMENT |
| KISHITA; DEPARTMENT OF | ) | |
| HUMAN SERVICES, STELLA | ) | |
| TRIPP; ARLEEN JOUXSON, ESQ.; | ) | |
| and PATRICIA MURAKAMI, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER (1) GRANTING DEFENDANT STELLA TRIPP'S MOTION TO DISMISS AND (2) DENYING PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Pro se Plaintiff Willard M. Imamoto ("Plaintiff") filed a Complaint against various government Defendants including Stella Tripp ("Tripp") on March 24, 2008. Plaintiff alleges violations of 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title II of the Americans With Disabilities Act ("ADA"), Title XVI of the Social Security Act, and state law claims, and seeks damages against

Tripp in the amount of $4,000,000.[1]  Currently before the court is Defendant

Tripp's Motion to Dismiss and Plaintiff's Counter Motion for Summary Judgment.

Based on the following, the court (1) GRANTS Defendant Tripp's Motion to

Dismiss and (2) DENIES Plaintiff's Counter Motion for Summary Judgment.

## II.  **BACKGROUND**

The facts underlying this action are largely set forth in the court's

July 3, 2008 Order Granting Defendant Jouxson's Motion for Summary Judgment

("July 3, 2008 Order"), and need not be recounted in full here.  *See Imamoto v.*

*Soc. Sec. Admin.*, 2008 WL 2622815, at *1-4 (D. Haw. July 3, 2008).  Briefly,

however, the court addresses facts relevant to the current Motions.

## A.    **Factual Background**

### 1.    *Plaintiff's Allegations Against Tripp*

Plaintiff alleges that Tripp played a role in the wrongful denial of his

benefits and a related government conspiracy, which violated his constitutional

rights, various federal statutes, and state law.  Compl. ¶¶ 14, 19.

In October 1998, Tripp became Plaintiff's Income Maintenance

Worker at the West Honolulu Branch of the State of Hawaii, Department of

Human Services ("DHS"), responsible for overseeing distribution of his financial

---

[1]  Pursuant to Local Rule 7.2(d), the court decides these Motions without a hearing.

and medical assistance and food stamps.  Ex. A, at unmarked page 15.[2]  On

December 8, 1998, Tripp sent Plaintiff two notifications informing him that due to

the increase in his social security and/or social security income ("SSI") as of

January 1, 1999: (1) his monthly food stamp benefits would decrease from

$151.00 to $137.00, Ex. A, at unmarked page 16; and (2) his monthly welfare

check would increase from $340.00 to $380.00.  *Id.* at unmarked page 17.  Both

December 8, 1998 letters stated, "If you do not agree with the calculations in your

benefits and request a fair hearing by [December 31, 1998], your benefits will

continue until the fairing hearing decision is reached if you do not waive your

rights to continuation of benefits."  *Id.* at unmarked pages 16-17.

On September 13, 2000, Irene Kishita, Field Office Manager at the

Social Security Administration ("SSA") sent Plaintiff a letter stating: "On

September 11, 2000, we talked with [DHS] about your eligibility for [SSI].  Based

on that talk, we have made an informal decision that you are not eligible for SSI."

Ex. H, at 8A.  Plaintiff claims that Irene Kishita, Patricia Murakami, and Tripp

made this decision.  Compl. ¶ 8.  Also on September 11, 2000, Tripp referred

Plaintiff to Dr. Kari Vasey to receive a psychiatric evaluation and informed him

that failure to keep the appointment could result in the termination of benefits.  Ex.

---

[2] All exhibits are attached to Plaintiff's Complaint.

H, at 8B.  Plaintiff asserts that the termination of his benefits was wrongful and that the mandatory psychiatric evaluation may be part of a related government cover-up.  *Id.* at 8A ("Mrs. Tripp now who did they talk to.  And who qualifies them.  Now welfare sent me to Dr. Kari Vasey on Sept. 14, 2000.  Is this a cover-up.  Or to avoid the informal conference and other action and the medias." (full capitalization removed)); *see* Compl. ¶ 8.

In response, Plaintiff wrote letters to various government agencies requesting information regarding this denial pursuant to the Freedom of Information Act ("FOIA").  *See* Exs. G, H; Compl. ¶¶ 8, 21.  In response to Plaintiff's FOIA request, on January 9, 2001, a Staff Attorney from the Office of Information Practices ("OIP") forwarded Plaintiff a November 9, 2000 letter from DHS that indicated DHS did not receive Plaintiff's September 15, 2000 FOIA request, Tripp "had no contact with SSA[,]" and DHS was not sure what information Plaintiff requested.  Ex. L, at 14A-D; *see* Compl. ¶ 14.  Plaintiff disputes that DHS did not receive his FOIA request -- he claims his certified mail receipt shows DHS received his letter on September 18, 2000.  Compl. ¶ 14.  Plaintiff alleges that DHS' November 9, 2000 letter "implicates [the] welfare supervisor and Mrs. Tripp" in the government fraud and constitutional violations regarding his wrongful termination of his benefits (and any related cover-up).  *See*

4

Compl. ¶ 14 ("This nails welfare for all stated charges of government fraud, civil rights violations, etc. AND NAILS, administrator Patricia Murakami, and Ms. Tripp.").

On January 1, 2001, Tripp sent Plaintiff a request for household information and informed him that failure to provide the requested information would result in DHS stopping or denying his food stamps.  Ex. N, at 17A; Compl. ¶ 19.  Plaintiff states that this letter implicates Tripp in the government fraud to deny his benefits.  *See id.*

On February 2, 2001, Tripp sent Plaintiff a notice that he was due for a medical evaluation in order to continue to receive benefits: "Based on your current medical evaluation on file, your disability ends on March 14, 2001.  If you wish continued assistance, an evaluation establishing continued disability must be submitted by March 14, 2001.  Failure to provide an evaluation for continued disability shall result in termination of benefits."  Ex. P, at 19A (full capitalization removed).[3]  On February 16, 2001, Tripp sent Plaintiff a letter assigning him a doctor for the required psychiatric evaluation and informing him to make an appointment.  Ex. P, at 19C.  Plaintiff claims that this letter implicates Tripp in the

---

[3]  The letter also states that "fair hearing rights and other important information are explained on the back of this notice."  Ex. P, at 19A (full capitalization removed).

5

violations of his constitutional rights and related government fraud and "SHOWS

FOUL PLAY AT THE WORST."  Compl. ¶ 19; Ex. P, at 19D.  On February 13,

2001, Plaintiff sent DHS his refusal to submit to the psychiatric evaluation.

Compl. ¶ 21; Ex. P, at 19D-E ("I REFUSE -- YOUR [sic] IMPLICATED -- BIG

TIME.").

On or about February 27, 2001, DHS denied Plaintiff's benefits.

Compl. at ¶ 21.[4]

### 2.    *Plaintiff's Mental Illness*

As noted in the court's July 3, 2008 Order, Plaintiff has been

diagnosed as having chronic paranoid schizophrenia from at least 1997.  *Imamoto*,

2008 WL 2622815, at *3.  Prior to being hospitalized per a November 21, 2004

court order, Plaintiff lived with family or in his own home.  *Id.*

Despite Plaintiff's history of mental illness, he has shown an ability to

vigorously advocate for his rights from August 2000 into September 2001.  *See id.*

(noting Plaintiff's advocacy from September 2000 to November 8, 2000); Exs. T,

U.  On March 26, 2001, May 1, 2001, and June 5, 2001, Plaintiff apparently made

---

[4] On April 6, 2001, DHS sent Plaintiff a letter requiring that he submit proof of how he planned to pay his expenses in order to continue to receive food stamps.  Compl. ¶ 23; Ex. S, at 22A.  On May 31, 2001, DHS sent Plaintiff a notification that his food stamp benefits would stop as of July 2001.  Ex. V.

three successive attempts to convince the Inspector General's Office to investigate

government fraud regarding the denial of his benefits. *See* Ex. T, at 24A-C;

Compl. ¶ 24.[5]  On September 5, 2001, Plaintiff contacted a law office regarding

his allegations of government fraud. *See* Ex. U.

## B.       Procedural Background

Defendant Tripp filed a Motion to Dismiss pursuant to Rule 12(b)(6)

on September 9, 2008.  On September 25, 2008, Plaintiff filed an Opposition,

which he referred to as his "Opposition Motion, and Counter Motion for Summary

Judgment against Defendant Stella Tripp."  On September 30, 2008, Tripp filed a

Reply.

## III.  STANDARDS OF REVIEW

## A.       Rule 12(b)(6): Failure to State a Claim

When reviewing a 12(b)(6) motion, a court takes the factual

allegations in the complaint as true and construes them in the light most favorable

to the plaintiff.[6]  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Lee v. City of*

---

[5] Plaintiff's handwritten note accompanying the copy of the mail receipts states, "First report sent to the Inspector Generals [sic] Office -- Record Not Found.  We want to lock them in. They over see [sic] government fraud.  Everyone is implicated. . . .  Filed for a search.  Filed for another search." *See* Ex. T, at 24A-B.

[6] Plaintiff is appearing pro se; consequently, the court will liberally construe his pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

*L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (*quoting Bell Atlantic*, 127 S. Ct. at 1965).

**B.     Rule 56(c): Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  <u>ANALYSIS</u>

### A.   **Tripp's Motion to Dismiss**

While not entirely clear, it appears that Plaintiff brings a 42 U.S.C. § 1983 action against Tripp for violating his constitutional rights as well as separate claims under Title VI of the Civil Rights Act of 1964, Title XVI of the Social Security Act, and Title II of the ADA for her role in the wrongful termination of his federal and state benefits and related government fraud. Plaintiff may also claim Tripp violated Hawaii Revised Statutes ("HRS") § 92F-21.  Tripp asserts that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff's claims against her are time-barred.

Because Plaintiff was on notice of any action against Tripp for wrongful denial of his benefits by July 2001 at the latest, all of Plaintiff's claims against Tripp are barred by the statute of limitations.

### 1.     The Statute of Limitations for Plaintiff's Federal Claims Has Run

When a federal statute lacks a statute of limitations, courts may apply the most appropriate state statue of limitations. *See Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987). Accordingly, the state's general statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, and Title II of the ADA. *Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (asserting state statute of limitations for personal injury actions covers claims brought under Title VI of the Civil Rights Act and 42 U.S.C. § 1983 (*citing Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 710-11 (per curiam) (9th Cir. 1993)); *Nieves-Marquez v. P.R.*, 353 F.3d 108, 118 (1st Cir. 2003) (same for ADA).

HRS § 657-7 provides that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13." Before considering HRS § 657-13, the court applies a two-year

statute of limitations to Plaintiff's claims pursuant to § 1983, Title VI of the Civil

Rights Act of 1964, and Title II of the ADA.[7]

Plaintiff claims that Tripp played a role in the wrongful termination

of his benefits and the related government cover-up.  As Plaintiff's Income

Maintenance Worker for DHS, Tripp sent Plaintiff correspondence regarding his

benefits on December 8, 1998, September 11, 2000, January 1, 2001, February 2,

2001, and February 16, 2001.  Plaintiff asserts that this series of communications

with Tripp, in part, led to a series of wrongful denials of his government benefits.

Tripp sent her last letter to Plaintiff on February 16, 2001, *see* Ex. P, which

Plaintiff claims resulted in the denial of his benefits on or about February 27,

2001.  *See* Compl. ¶ 21.  DHS also subsequently cancelled Plaintiff's food stamps

effective July 2001.  Ex. V, at 26A.

Liberally viewing the facts in the light most favorable to Plaintiff,

Plaintiff's claims against Tripp accrued on or about February 27, 2001 -- the date

by which Plaintiff had actual knowledge that his benefits were cancelled and

---

[7] Federal law, on the other hand, governs when a federal claim accrues.  *See Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1095 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992) ("Federal law governs the question of when a federal claim accrues."); *Repp v. Or. Health Scis. Univ.*, 972 F. Supp. 546, 548 (D. Or. 1997) (same). Under federal law, a cause of action accrues when the "plaintiff knows or had reason to know" of the injury, which is the basis for the claim.  *Morse*, 973 F.2d at 125; *see also Wallace*, 127 S. Ct. at 1097 (stating claim accrues when wrongful act results in damages).

suspected Tripp had a role in the termination of those benefits.  Even if Plaintiff

attributes DHS' subsequent denial of food stamps to Tripp, he became aware of

that denial when he stopped receiving food stamps in July 2001.  Plaintiff,

therefore, was on notice of all potential claims against Tripp as of July 2001 at the

very latest.  Because Plaintiff filed this action on March 24, 2008 (almost seven

years after his claims accrued), the two-year statute of limitations has run on

Plaintiff's federal claims.[8]

> **2.    *The Two-Year Statute of Limitations for HRS § 92F-21 Has Run***

Liberally construing Plaintiff's pleading, he also may state that he

was denied access to records requested pursuant to HRS § 92F-21.  *See* Pl.'s

Opp'n unmarked pages 2, 5, 9.  HRS § 92F-21 states that

> [e]ach agency that maintains any accessible personal record
> shall make that record available to the individual to whom it
> pertains, in a reasonably prompt manner and in a reasonably
> intelligible form.  Where necessary the agency shall provide a

---

[8]  Without determining whether a claim against Tripp pursuant to Title XVI of the Social Security Act would be proper, the court finds that Plaintiff's Title XVI claims are time-barred. Claims under Title XVI must be brought within sixty days after the mailing of notice of decision to the claimant.  *See Vernon v. Heckler*, 811 F.2d 1274, 1277 (9th Cir. 1987) ("Section 405(g) of [T]itle 42 provides that a Social Security claimant may obtain review of a 'final' decision of the Secretary of Health and Human Services by 'a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.'" (*quoting* 42 U.S.C. § 405(g)).  Receipt of the notice is presumed to occur five days after the date of the notice.  *See id.*  The last correspondence Plaintiff received from Tripp is dated February 16, 2001.  Ex. P.  The last notice that Plaintiff received from DHS denying him benefits is dated May 31, 2001.  *See* Ex. V, at 26A.  Because Plaintiff filed this Complaint on March 24, 2008, the sixty-day statute of limitations on his Title XVI claims has likewise run.

translation into common terms of any machine readable code or
any code or abbreviation employed for internal agency use.

Actions for failure to make records available pursuant to HRS § 92F-21 are

subject to a two-year statute of limitations -- "No action shall be brought later than

two years after notification of the agency denial, or where applicable, the date of

receipt of the final determination of the office of information practices."  HRS

§ 92F-27(e).

Even if an action under HRS § 92F-21 may be brought in this court,[9]

the OIP sent Plaintiff a letter regarding his request for government records on

January 9, 2001.  Ex. L, at 14C-D; Compl. ¶ 14.  Because this action was filed

over seven years after receipt of the OIP's letter, any claim for a violation of HRS

§ 92F-21 is barred by the statute of limitations.

### 3.    *No Tolling for Insanity*

While the statute of limitations has run on Plaintiff's claims, he

nevertheless asserts that his March 24, 2008 Complaint is timely because his

continuous mental insanity tolled the statute of limitations pursuant to Hawaii's

tolling provision, HRS § 657-13.  *See* Pl.'s Opp'n unmarked page 2.  HRS § 657-

13 provides:

---

[9]  HRS § 92F-27(e) states: "An action may be brought in the circuit court where the
complainant resides, the complainant's principal place of business is situated, or the
complainant's relevant personal record is situated."

> If any person entitled to bring any action specified in this part . . . is, at the time the cause of action accrued, either:
>
> (1) Within the age of eighteen years; or,
>
> (2) Insane; or,
>
> (3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life;
>
> such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

Under § 657-13, the statute of limitations is tolled only for disabilities that exist "at the time the cause of action accrued" and once that disability is removed the statute of limitations begins. *Turner v. City & County of Honolulu*, 2008 WL 1847915, at *5 (D. Haw. Apr. 24, 2008); *see also Gutierrez v. D.K. Butler*, 2008 WL 436948, at *2 (E.D. Cal. Feb. 14, 2008) ("A limitation period is not suspended by a disability or impediment to suit arising *after* the period commenced running." (emphasis added)); *Gamba v. Woodford*, 2007 WL 2481746, at *3 (E.D. Cal. Aug. 29, 2007) (stating that the plaintiff must prove that he was continuously insane from the time his cause of action accrued).

A showing of insanity in the context of tolling the statute of limitations under § 657-13 requires: "(1) the inability to understand one's legal

rights or manage one's affairs; (2) the inability to understand the nature or effect of one's acts; or (3) the inability to carry out one's business and prosecute the claim." *See Buck v. Miles*, 89 Haw. 244, 252, 971 P.2d 717, 725 (1999) (citations omitted); *Imamoto*, 2008 WL 2622815, at *6.

For largely the same reasons set forth in the July 3, 2008 Order, Plaintiff has failed to demonstrate as of July 2001: (1) the inability to understand his legal rights or manage his affairs; (2) the inability to understand the nature or effect of his acts; or (3) the inability to carry out his business and prosecute his claim. In addition to the actions set forth in the July 3, 2008 Order, Plaintiff's three successive attempts to report government fraud to the OIG on March 26, 2001, May 1, 2001, and June 5, 2001,[10] *see* Ex. T, and his attempt to contact a law office regarding government fraud on September 5, 2001, *see* Ex. U, support the conclusion that Plaintiff could understand his legal rights, understand the nature of his acts, and carry out his business and prosecute his claims. Further, as noted in the July 3, 2008 Order, since 2003 Plaintiff has filed eight other pro se lawsuits in this court, which include clearly articulated requests for relief from the appropriate state and federal agencies and do not indicate Plaintiff's inability to understand his

_____

[10] Plaintiff appropriately reported government fraud to the OIG, which actively solicits reports of fraud for all Health and Human Services ("HHS") agencies and related programs as part of its mission to protect the integrity of the HHS and health and welfare beneficiaries.

legal rights or manage his affairs.  *See Imamoto*, 2008 WL 2622815, at *6 n.5.  In fact, Plaintiff notes that the 2003 Complaint was filed against the same Defendants in this action.  *See* Pl.'s Opp'n unmarked page 3.

Even assuming that Plaintiff was at one time insane for purposes of the tolling provision, based on Plaintiff's various acts of advocacy throughout this period, Plaintiff's disability was removed (even if only temporarily) for the purposes of HRS § 657-13 into late 2001.  Even if Plaintiff's symptoms later recurred, any later insanity would not further toll the statute of limitations where, as here, Plaintiff's disability was not continuous.  *See Turner*, 2008 WL 1847915, at *5-7 (finding that plaintiff failed to prove that he was continuously insane from the time his cause of action accrued); *Gamba*, 2007 WL 2481746, at *3 (same).

Because Plaintiff has established that he was able to understand his legal rights, carry out his business, and prosecute his claims at the time that his cause of action accrued against Tripp in 2001, Plaintiff's claims may not be tolled under this section.

### 4.    *No Fraudulent Concealment*

Plaintiff also argues that the statute of limitations on his claims were tolled due to fraudulent concealment.  Pl.'s Opp'n unmarked page 2, 5.

In pertinent part, the Hawaii fraudulent concealment provision, HRS § 657-20, states that where the defendant

> fraudulently conceals the existence of the cause of action . . . from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same *discovers or should have discovered, the existence of the cause of action* . . . , although the action would otherwise be barred by the period of limitation.

(emphasis added).  As used in § 657-20, fraudulent concealment means the "employment of artifice, planned to prevent inquiry or escape investigation, and [mislead] or hinder acquirement of information disclosing a right of action."  *See Au v. Au*, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981) (quotation and citation signals omitted); *see also Gast v. Kwak*, 396 F. Supp. 2d 1150, 1157 (D. Haw. 2005) (applying HRS § 657-20); *Nakamoto v. Hartley*, 758 F. Supp. 1357, 1364-65 (D. Haw. 1991) (*citing Au* and applying HRS § 657-20).  Accordingly, fraudulent concealment requires that a plaintiff show that a defendant acted affirmatively and fraudulently to conceal the cause of action.  *See Au*, 63 Haw. at 215, 626 P.2d at 178; *Gast*, 396 F. Supp. at 1157.  *Au* states that

> [i]t is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own

17

fault if he does not avail himself of those means which
the law provides for prosecuting or preserving his claim.

*Au*, 63 Haw. at 216, 626 P.2d at 178 (citation and quotations signals omitted).

Because Plaintiff fails to state a claim of affirmative concealment,

HRS § 657-20 does not toll Plaintiff's claims.  Plaintiff simply asserts that "non

disclosure . . . amounts to concealment[.]"  *See* Pl.'s Opp'n unmarked pages 2,5.

But viewing the facts liberally and in Plaintiff's favor, he has not identified one

affirmative act of concealment Tripp committed -- let alone that she employed a

plan sufficient to trigger § 657-20.  *See Au*, 63 Haw. at 215, 626 P.2d at 178; *see*

*also Gast*, 396 F. Supp. 2d at 1157 (finding fraudulent concealment did not apply

for lack of "affirmative steps to conceal anything").  To the contrary, Tripp's

February 2, 2001 letter to Plaintiff included notice of his fair hearing rights.  *See*

Ex. P at 19A.

Plaintiff's argument that DHS' failure to respond adequately to his

FOIA request entitles him to tolling under HRS § 657-20 is also unavailing.  *See*

Opp'n unmarked pages 5-6, 9.  Specifically, Plaintiff argues that the agency

concealed facts "needed by the Plaintiff to determine whether a cause of action

exists."  *Id.* at unmarked page 5.  But Plaintiff's own submissions show he had

actual knowledge of all of his potential causes of action against Tripp after he

received the February letter and was subsequently denied benefits at the end of

18

that month.[11]  *See* Exs. P, at 19A, 19C-D; H; L, at 14C-D.  Even assuming Tripp

had a role in withholding information from Plaintiff pursuant to his FOIA

requests, Plaintiff knew of the basic acts alleged in his Complaint as early as

February 2001 and by the very latest July 2001.  *See Au*, 63 Haw. at 216, 626 P.2d

at 178 ("It is enough that [plaintiff] knows that a cause of action exists in his

favor, and when he has this knowledge, it is his own fault if he does not avail

himself of those means which the law provides for prosecuting or preserving his

claim." (citation and quotations signals omitted)); *see also Pope v. Bond*, 641 F.

Supp. 489, 496 (D.D.C. 1986) (finding no fraudulent concealment where

information was withheld from plaintiff pursuant to his FOIA requests where

plaintiff's own submissions showed that he had knowledge of the basic acts

alleged in that complaint).  In short, HRS § 657-20 provides Plaintiff no relief.[12]

      Because the statute of limitations has run on Plaintiff's claims and no

tolling provision applies, Plaintiff has failed to state a claim upon which relief can

be granted.  Accordingly, the court GRANTS Defendants' Motion to Dismiss.

---

[11]  To the extent Plaintiff claims that Tripp had a role in the July 2001 denial of his food
stamps, he was aware of that claim at that time.

[12]  Plaintiff also argues that HRS § 657-7.3 -- the statute of limitations for medical
malpractice -- tolls his claims.  Pl.'s Opp'n unmarked page 5.  Because Plaintiff does not state a
claim of medical malpractice, HRS § 657-7.3 does not apply.

**B.     Plaintiff's Counter Motion for Summary Judgment**

Plaintiff has not met his summary judgment burden either in form or substance.  To prevail on summary judgment, Plaintiff as the moving party "bears the initial burden of informing the court of the basis for [his] motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun*, 509 F.3d at 984 (*citing Celotex*, 477 U.S. at 323); *see also Jespersen*, 392 F.3d at 1079.  Further, Local Rule 56.1(a) states that all motions for summary judgment "shall be accompanied by a supporting memorandum and a separate concise statement detailing each material fact as to which the moving party contends that there are no genuine issues to be tried that are essential for the court's determination of the summary judgment motion (not the entire case)."

Plaintiff has failed on both counts -- he has neither identified the basis of his claim or how the record shows an absence of a genuine material fact for trial nor filed a separate, concise statement of facts.  In fact, Plaintiff has put forth no evidence -- no affidavits, declarations, or exhibits -- in support of his motion.  It is a basic principle that a party cannot rely on mere argument and prevail at summary judgment.  *See Soremekun*, 509 F.3d at 984; *Jespersen*, 392 F.3d at 1079.  While Imamoto appears pro see, that does not excuse him from complying with the

Federal and Local Rules.  *See, e.g.*, *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law.").

Because Plaintiff has not met his summary judgment burden and his claims are time-barred as a matter of law, this court DENIES Plaintiff's Counter Motion for Summary Judgment.

## V. <u>CONCLUSION</u>

For the reasons stated above, the court GRANTS Defendant Tripp's Motion to Dismiss and DENIES Plaintiff's Counter Motion for Summary Judgment.  The claims against the SSA, Irene Kishita, and Patricia Murakami remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 20, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Imamoto v. Soc. Sec. Admin., et al.*, Civ. No. 08-00137 JMS/KSC; Order (1) Granting Defendant Stella Tripp's Motion to Dismiss and (2) Denying Plaintiff's Counter Motion for Summary Judgment

21