IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLARD M. IMAMOTO, | ) | CIVIL NO. 08-00137 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS |
| | ) | SOCIAL SECURITY |
| vs. | ) | ADMINISTRATION AND IRENE |
| | ) | KISHITA'S  MOTION TO DISMISS |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION; IRENE | ) | |
| KISHITA; DEPARTMENT OF | ) | |
| HUMAN SERVICES, STELLA | ) | |
| TRIPP; ARLEEN JOUXSON, ESQ.; | ) | |
| and PATRICIA MURAKAMI, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANTS SOCIAL SECURITY ADMINISTRATION AND IRENE KISHITA'S MOTION TO DISMISS

## I. INTRODUCTION

Pro se Plaintiff Willard M. Imamoto ("Plaintiff") filed a Complaint against various government Defendants including the Social Security Administration ("SSA") and former SSA employee Irene Kishita ("Kishita") on March 24, 2008 for claims arising from the alleged improper denial of his state and federal benefits.  Plaintiff alleges violations of 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act ("ADA"), Title XVI of the Social Security Act, and state law claims, and seeks

damages against SSA and Kishita (collectively, "Federal Defendants") in the amounts of $300,000,000 and $4,000,000 respectively.  Currently before the court is Federal Defendants' Motion to Dismiss.  Based on the following, the court GRANTS Federal Defendants' Motion.

## II.  BACKGROUND

### A.    Factual Background

Plaintiff alleges that the SSA wrongfully denied him social security benefits and that Kishita -- as District Manager of the Honolulu SSA Office -- played a role in that denial and a related government conspiracy, which violated his constitutional rights, various federal statutes, and state law.  Compl. at P1,[1] P5, ¶¶ 7-8, 12-14, 16, 19.

### 1.    *Plaintiff's 1998 Application for Benefits*

In July 1998, Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act, *see* Pl.'s Ex. A, at unmarked page 5; Defs.' Ex. 1, Randall Decl. ¶ 3, and the SSA determined that Plaintiff qualified as "disabled" from October 4, 1994 to August 20, 1998.  Pl.'s Ex. A, at unmarked page 3; *see also* Randall Decl.

---

[1]  The court cites to the Complaint as paginated by Plaintiff where no paragraph number is provided.  Plaintiff's exhibits cited in this Order are attached to his Complaint.

¶ 4.[2]  Plaintiff received one retroactive DIB payment and regular SSI payments from August 1998 until July 2000.  Randall Decl. ¶ 5; Pl.'s Ex. A, at unmarked page 5.

On August 2, 2000, Kishita sent Plaintiff a letter notifying him of SSA's overpayment of $8,644.32 and requesting repayment.  Pl.'s Ex. C, at 3a. Kishita's August 2, 2000 letter explained that Plaintiff was "overpaid because it was determined that [he was] no longer disabled effective [November 1998,]" informed Plaintiff of his right to appeal, and explained the appeal process.  *Id.* at 3a-c (full capitalization removed).  On September 13, 2000, Kishita sent Plaintiff another letter informing him that SSA "made an informal decision that [he was] not eligible for SSI."  Pl.'s Ex. H, at 8A.

Plaintiff claims that on August 7, 2000 and August 14, 2000 he called the SSA office and requested a "form for payment continuance."  Pl.'s Ex. D, at 4f (full capitalization removed).  On August 17, 2000, Plaintiff notes that "[t]hey refuse to give me a form for payment continuance."  *Id.* (full capitalization removed).

After termination of his SSI benefits, Plaintiff wrote a letter to the

---

[2]  Plaintiff was incarcerated either in the Oahu Community Correctional Center or the Hawaii State Hospital from May 15, 1995 to August 20, 1998.  Pl.'s Ex. A, at unmarked page 1.

SSA requesting information regarding his denial pursuant to the Freedom of Information Act ("FOIA").[3]  *See* Pl.'s Exs. G, at 7e-h, H; Compl. ¶¶ 7, 8.  On September 14, 2000, Plaintiff sent a letter to the SSA following up on his FOIA request and demanding an informal conference to discuss his denial of benefits, which he referred to as an appeal -- "this is the appeal."  Pl.'s Ex. G, at 7h; Compl. ¶ 7 ("Then a letter of appeal to Social Security Administration, ALL FILED WITHIN THE TIME LIMITS."); *see also id.* ¶ 16.  On September 23, 2000, Plaintiff sent another letter to the SSA: "We want to file an appeal of the September 13, 2000 eligibility decision that you made the talk you had with the welfare department.  We just want to file the appeal and will wait until we hear from the Depart[ment] of Justice and the Attorney Generals [sic] Office (Janet Reno)."  Pl.'s Ex. H, at 8e (full capitalization removed); Compl. ¶¶ 8, 16.  Plaintiff claims that these two letters are timely appeals of his 2000 denial of benefits.  *See* Pl.'s Supp. Reply unmarked page 1.

        Federal Defendants maintain that Plaintiff never filed an appeal in

---

[3]  Plaintiff also contacted the U.S. Department of Justice, Civil Rights Division ("Civil Rights Division"), regarding the termination of his social security benefits.  *See* Pl.'s Exs. Q, R.  On February 15, 2001, the Civil Rights Division forwarded his inquiry to Kenneth S. Apfel, Commissioner of the SSA ("Commissioner"), and Plaintiff received a letter from the Associate Commissioner of the SSA dated March 13, 2001, which stated, "We are sending your correspondence to our Honolulu office. . . .  Our representatives there will contact you and answer your questions."  *See* Pl.'s. Exs. R, at 21a, Q.

2000.  Supp. Randall Decl. ¶ 4.  During the November 24, 2008 hearing, Plaintiff

acknowledged that he never had a hearing regarding his 1998 application for

benefits.

### 2.   *Plaintiff's 2005 Application for Benefits*

Plaintiff submitted a new application for SSI in May 2005 and

reapplied for DIB in December 2005.  Randall Decl. ¶¶ 6-7.  In November 2005,

Plaintiff began receiving monthly SSI benefits.  *Id.* ¶ 6.

Following Plaintiff's re-application for DIB, Hawaii Disability

Determination Services ("HDDS") reopened Plaintiff's July 1998 application and

determined that he had been continuously disabled from October 4, 1994 to the

present, and, as a result, he received retroactive DIB benefits in addition to regular

monthly DIB benefits beginning in June 2006.  *Id.* ¶¶ 7, 8.  At that time, SSA

determined that, due to his impairment, Plaintiff had good cause for failing to file

a timely appeal of the 1998 disability determination -- essentially treating HDDS'

review as the appeal Plaintiff could have brought in 2000.  Supp. Randall Decl.

¶ 6.[4]  Accordingly, Plaintiff's SSI payments were suspended in 2006 because his

income exceeded SSI eligibility requirements.  Randall Decl. ¶ 8.  Plaintiff has

---

[4] As of September 30, 2008, the SSA has paid Plaintiff all of the retroactive DIB benefits due to him based on his 1998 application.  Randall Decl. ¶ 9.

5

appealed neither the retroactive nor the current monthly benefit payments. *Id.*

¶ 10.[5]

**B.     Procedural Background**

Federal Defendants filed a Motion to Dismiss on October 22, 2008.

On November 13, 2008, Plaintiff filed an Opposition.  On December 3, 2008,

Federal Defendants filed a Supplemental Memorandum in Support of Federal

Defendants' Motion to Dismiss.  On December 9, 2008, Plaintiff filed a Reply to

Federal Defendants' Supplemental Memorandum.  A hearing was held on

November 24, 2008.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss

claims over which it lacks proper subject matter jurisdiction.  The court may

determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule

12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of

a case." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195

(9th Cir. 2008).

Pursuant to Rule 12(b)(1), a party may make a jurisdictional attack

---

[5]  Plaintiff confirmed during the November 24, 2008 hearing that this action does not challenge his 2005 application for benefits.  *See* Supp. Reply unmarked page 4.

that is either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

1039 (9th Cir. 2004); *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d

730, 733 (9th Cir. 1979). A facial attack occurs when the movant "asserts that the

allegations contained in a complaint are insufficient on their face to invoke federal

jurisdiction." *Meyer*, 373 F.3d at 1039. A factual attack occurs when the movant

"disputes the truth of the allegations that, by themselves, would otherwise invoke

federal jurisdiction." *Id.*

In evaluating a factual attack on jurisdiction, as in this case, the court

may accept and evaluate evidence beyond the complaint without having to convert

the motion into one for summary judgment. *Savage v. Glendale Union High Sch.*,

343 F.3d 1036, 1040 n.2 (9th Cir. 2003); *Meyer*, 373 F.3d at 1039; *Thornhill*, 594

F.2d at 733.[6] Further, the court "need not presume the truthfulness of the

plaintiffs' allegations" and may examine disputed facts to determine whether

subject matter jurisdiction exists. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

2000) (citation signals omitted); *Thornhill*, 594 F.2d at 733 ("No presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed

material facts will not preclude the trial court from evaluating for itself the merits

---

[6] Plaintiff is appearing pro se; consequently, the court will liberally construe his
pleadings. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

of jurisdictional claims.").

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1040 n.2. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

## IV.  ANALYSIS

Federal Defendants assert that all of Plaintiff's claims must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because Federal Defendants are entitled to sovereign immunity.  For the foregoing reasons, the court agrees.[7]

### A.    Legal Framework

The United States and its agencies have sovereign immunity from suit unless Congress expressly waives immunity by statute.  *See F.D.I.C. v. Meyer*, 510

---

[7]  Because there is no subject matter jurisdiction over this action, the court does not address Federal Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

U.S. 471, 475 (1994); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

The waiver must be "unequivocally expressed" and "not enlarged beyond what the

language requires." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992)

(internal alterations and quotation omitted); *see also Dep't of Army v. Blue Fox,*

*Inc.*, 525 U.S. 255, 261 (1999) (stating that any legislative waiver of immunity

must be strictly construed "in favor of the sovereign").

Sovereign immunity extends to the SSA and its employees. *See*

*Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003) ("The United

States, including its agencies and its employees, can be sued only to the extent that

it has expressly waived its sovereign immunity."); *Hodge v. Dalton*, 107 F.3d 705,

707 (9th Cir. 1997) ("The doctrine of sovereign immunity applies to federal

agencies and to federal employees acting within their official capacities.").

Thus, as Plaintiff does not challenge that the SSA is a federal agency

or Kishita was a federal employee, in order to maintain jurisdiction over the

Federal Defendants in this action, Plaintiff bears the burden to identify an express

statutory waiver of sovereign immunity. *See id.*

The Social Security Act allows only a narrow waiver of sovereign

immunity by providing for limited judicial review of the Commissioner's "final

decisions" made after a hearing. *See* 42 U.S.C. §§ 405(g), (h); *see also Schweiker*

*v. Chilicky*, 487 U.S. 412, 424 (1988) (noting social security claimant is entitled to judicial review of denial of claim after exhausting administrative remedies).

Section 405(h) bars all other claims brought under the Social Security Act, including derivative claims generally "arising under" the Social Security Act. Thus, a plaintiff cannot avoid the § 405(h) bar to jurisdiction by artful pleading if his claim is "inextricably intertwined" with a claim for social security benefits or if the "substantive basis" of his claim is the Social Security Act. *See* § 405(h);[8] *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000) (noting that § 405(h) plainly bars federal question jurisdiction, or § 1331 review, in a typical social security benefits case "where an individual seeks a monetary benefit from the agency . . . , the agency denies the benefit, and the individual challenges the lawfulness of that denial . . . irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds"); *Kaiser*, 347 F.3d at 1111-12 (finding § 405(h) bars claim for damages based on denial of

_____

[8] Section 405(h) provides that:

> [t]he findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to the hearing.  No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 [(federal question jurisdiction)] or 1346 [(United States as defendant)] of title 28 to recover on any claim arising under this subchapter.

benefits); *Hooker v. U.S. Dep't of Health & Human Servs.*, 858 F.2d 525, 529-30

(9th Cir. 1988) (holding § 405(h) bars plaintiff's claim for negligent termination of

disability benefits). *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975), explains

the broad scope of § 405(h)'s "arising under" language in denying a derivative

constitutional claim --

> [i]t would, of course, be fruitless to contend that appellees'
> claim is one which does not arise under the Constitution, since
> their constitutional arguments are critical to their complaint.
> But it is just as fruitless to argue that this action does not also
> arise under the Social Security Act. For not only is it Social
> Security benefits which appellees seek to recover, but it is the
> Social Security Act which provides both the standing and the
> substantive basis for the presentation of their constitutional
> contentions. . . . To contend that such an action does not arise
> under the Act whose benefits are sought is to ignore both the
> language and the substance of the complaint and judgment.

Additionally, the Social Security Act "makes no provision for

remedies in money damages against officials responsible for . . . conduct that leads

to the wrongful denial of benefits." *See Chilicky*, 487 U.S. at 424-25 (holding

there is no *Bivens*[9] action for federal SSA employees' alleged role in plaintiffs'

wrongful denial of benefits because such a remedy would exceed the scope of

---

[9] A *Bivens* action provides a federal cause of action for money damages where Congress
has not specifically provided a remedy -- "where legal rights have been invaded, and a federal
statute provides for a general right to sue for such invasion, federal courts may use any available
remedy to make good the wrong done." *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403
U.S. 388, 396-97 (1971) (holding that victim of Fourth Amendment violation by federal officers
acting under color of their authority may bring suit for money damages in federal court).

Congress' remedial scheme).

## B.    Application

Liberally construing Plaintiff's Complaint, he has not identified an express waiver of sovereign immunity for any of his causes of action.

First, Plaintiff has not brought a valid § 405(g) claim.  Plaintiff may only bring a § 405(g) claim after the Commissioner's "final decision" subsequent to a hearing to which he was a party.  During the November 24, 2008 hearing, Plaintiff admitted that he did not have a hearing after his 2000 denial of benefits.  Further, an independent review of the record reveals that the Commissioner never entered a "final decision" regarding Plaintiff's 2000 benefits denial.  *See* Supp. Randall Decl. ¶¶ 4, 6.[10]  Viewing the facts in the light most favorable to Plaintiff and liberally construing his Complaint, Plaintiff did not bring this action to challenge a "final decision" pursuant to § 405(g).

Second, Plaintiff's derivative claims are barred by § 405(h).[11]  Even though Plaintiff alleges various constitutional, statutory, and tort claims, Plaintiff's

---

[10]  Because Plaintiff does not allege that the Commissioner issued a "final decision," Plaintiff's argument that he filed a timely appeal of his 2000 denial of benefits is immaterial.  *See* Pl.'s Supp. Reply unmarked pages 1-2.  Accordingly, this court makes no decision regarding whether Plaintiff's administrative appeal was timely or proper.

[11]  While not entirely clear from his Complaint, it appears that Plaintiff claims that Federal Defendants violated his constitutional rights, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, Title XVI of the Social Security Act, the "Hate act," and Title II of the ADA, and committed fraud by wrongfully terminating his benefits.  *See* Compl. at P1, P5.

allegations center around Federal Defendants' determination of his eligibility for benefits and their alleged wrongful cessation of his benefits -- all decisions made pursuant to the Social Security Act. *See* Compl. ¶¶ 8, 13, 19; Pl.'s Opp'n unmarked pages 2-3, 5; Pl.'s Supp. Reply unmarked page 4. Simply stated, Plaintiff's claims are "inextricably intertwined" with his claim for benefits. *See Ringer*, 466 U.S. at 614. In fact, Plaintiff explains that the improper denial of his benefits is the "substantive basis" of his claim -- "SSA and Irene Kishita, because they denied my benefits, by saying that I m [sic] now able, and not disabled, has [sic] violated my constitutional rights under the 5th and 14th Amendments, by denying me the right to life, liberty." *See* Pl.'s Opp'n unmarked page 3; *see also id.* unmarked page 5 ("I would have lost my independent living arrangements . . . , and to be forced [sic] to live in the streets, because SSA denied me payment continuance[.]").[12] Because the Social Security Act provides the "substantive basis" for Plaintiff's derivative claims and his claims are "inextricably intertwined" with his claim for benefits, § 405(h) bars subject matter jurisdiction over those claims. *Ringer*, 466 U.S. at 614-15.

Plaintiff, therefore, has failed to identify any statute explicitly authorizing him to sue the SSA or its employees for damages based on the facts

---

[12] Plaintiff also references the Social Security Act and related regulations in support of his claims. *See* Pl.'s Opp'n unmarked page 5.

alleged in his Complaint.  Accordingly, Federal Defendants maintain sovereign

immunity and this court lacks subject matter jurisdiction over Plaintiff's claims.[13]

Thus, the court GRANTS Federal Defendants' Motion to Dismiss.[14]

///

///

///

///

---

[13]  Liberally construing Plaintiff's Complaint, he may also claim that Federal Defendants failed to comply with his FOIA request.  S*ee* Compl. ¶ 14.  A plaintiff must exhaust his administrative remedies prior to seeking judicial review of denial of a FOIA request.  *In re Steele*, 799 F.2d 461, 465-66 (9th Cir. 1986).  Further, FOIA requests to the SSA must be appealed to the Commissioner.  *See* 20 C.F.R. § 402.200.  "Where no attempt to comply fully with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine."  *In re Steele*, 799 F.2d at 466.  Because Plaintiff does not allege that *he* made any attempt to appeal the denial of his FOIA request to the Commissioner, this court lacks jurisdiction over any FOIA claim.

Plaintiff unpersuasively argues that because the Commissioner received his request for information via the Civil Rights Division, he has exhausted his remedies and this court has jurisdiction over his FOIA claim.  *See* Pl.'s Opp'n unmarked page 1-2.  A third party forwarding Plaintiff's letter requesting information, however, does not constitute a valid appeal of his FOIA request to the Commissioner.  Further, the record indicates that Plaintiff did not follow up with a proper appeal to the Commissioner and may have affirmatively indicated to the Commissioner that he did *not* file an appeal.  *See* Pl.'s Exs. Q, at 20a ("We did not want this report to go to Kenneth S. Apfel -- Commissioner Social Security Administration."), *id.* at 20b ("Hey Kenneth go fuck yourself!"), R, at 21a ("We told Kenneth S. Apfel to fuck himself.  (2x)") (full capitalization removed).

[14]  Because Plaintiff has not brought a § 405(g) claim, his request for a continuance to receive an affidavit regarding his retroactive benefits would not produce relevant evidence.  *See* Pl.'s Supp. Reply unmarked page 4.  Additionally, to the extent Plaintiff requests a continuance to show the timeliness of his 2000 appeal, that request is also immaterial to this action.  The court, therefore, denies Plaintiff's request for a continuance.

## V.  **CONCLUSION**

For the reasons stated above, the court DISMISSES all claims against Federal Defendants.  None of Plaintiff's claims remains.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 9, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Imamoto v. Soc. Sec. Admin., et al.*, Civ. No. 08-00137 JMS/KSC; Order Granting Defendant Social Security Administration and Irene Kishita's Motion to Dismiss